J.E. ALLISON; Patricia Allison; E.C. Benton; Phyllis M. Bertsch; Jane Calloway; William R. Canino; Cecil Jean Chamness; Jessie Chamness; Terry Clowers; Charles Donham; Riley Donica; David Elms; Henry Ginger; Jimmy D. Hannah; Don Howard; Dorothy Landry; Billy Lenderman; McNeill Agency Inc.; Dennis McNeill; James McNeill; Patsy McNeill; Eudox Patterson; Bill D. Plunkett; Catherine Plunkett; Andrew Ponder; Charles Presher; Charlie W. Scarbrough; Claudia Sparrow; Martha H. Thompson; Jerry D. Tolliver; Frank Towery; Bill J. Wawak; Earlene T. Wawak; Hugh Williams, Plaintiffs–Appellants,

v.

SECURITY BENEFIT LIFE INSURANCE COMPANY, Defendant–Appellee,

v.

LIFE ASSURANCE COMPANY OF PENNSYLVANIA, Third Party–Defendant.

No. 91–3488.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1992.

Decided Dec. 3, 1992.

Thomas M. Bramhall, Little Rock, Ark., argued, plaintiffs-appellants.

Byron Freeland, Little Rock, Ark., argued, for defendant-appellee.

Before McMILLIAN, WOLLMAN, and LOKEN, Circuit Judges.

LOKEN, Circuit Judge.

Plaintiffs appeal the district court's[1] dismissal of their diversity action against Security Benefit Life Insurance Company ("SBL") for lack of subject matter jurisdiction because each plaintiff's amount in controversy is less than $50,000. We affirm.

The seeds of this dispute were sown in 1984 when SBL, a Kansas-based life insur-er, acquired the stock of First Pyramid Life Insurance Company of America ("FPL"), an Arkansas-based life insurer, with the approval of the Arkansas Insurance Commissioner ("Arkansas Commissioner"). Following the acquisition, SBL sold off some FPL lines of business, integrated others into SBL's business, and separately administered many FPL policies.

At some point SBL applied to the Arkansas Commissioner for permission to sell SBL's block of FPL interest sensitive whole life policies to a small, Oklahoma-based insurer. McNeill Agency, Inc., a long-standing FPL agent in Little Rock that had marketed FPL's interest sensitive products in the early 1980's, objected to that sale, and it was eventually disapproved. Thereafter, McNeill Agency complained at length about SBL's administration of the FPL interest sensitive policies. In 1989, SBL terminated McNeill Agency. McNeill Agency and its principals, James and Dennis McNeill, subsequently sued SBL.

McNeill Agency's attorneys then commenced this class action in which thirty FPL policyholders, including McNeill Agency and its principals, seek compensatory and punitive damages for SBL's alleged fraud, bad faith, and conversion. The purported class consists of FPL policyholders whose policies were issued through McNeill Agency. Plaintiffs fall into two groups—interest sensitive life policyholders and annuity policyholders.

In their sixty-five page complaint, all plaintiffs allege that they were "denied their agent of choice" when McNeill Agency was wrongfully terminated. In addition, the interest sensitive plaintiffs allege a pattern of misconduct in SBL's administration of their policies, including erroneous annual reports, refusal to honor premium option provisions,[2] erroneous lapse no-

---

1. The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas.

2. The interest sensitive policyholder may choose to pay the full premium, pay a lesser premium, or, if there is sufficient cash value in the policy, pay no premium at all. In administering these policies, SBL required the policyholder to give notice each year if the zero premium option was elected. Plaintiffs contend that, under the policy, each premium payment election remains in force until further notice.

tices followed by conversions into less valuable policies,[3] unauthorized charges, and wrongful surrender charges.[4] The annuity plaintiffs allege that SBL failed to protect them when it sold this line of business to a weak Pennsylvania insurer which later sold it to a now-insolvent Arizona company.

Shortly after filing suit, plaintiffs moved for class certification and to consolidate this case with McNeill Agency's wrongful termination case. SBL moved to dismiss on the ground that no plaintiff's claim exceeded the diversity jurisdiction minimum of $50,000. *See* 28 U.S.C. § 1332(a). At the motion hearing, plaintiffs submitted documents, deposition testimony, and the live testimony of James and Dennis McNeill. SBL submitted deposition testimony and the McNeills' interrogatory answers in the McNeill Agency case.

At the close of the hearing the district court denied the class certification motion and dismissed the case. Regarding each of the interest sensitive plaintiffs, the court found little if any compensatory damage because the policies were still in existence; it found no basis for a claim of punitive damages under Arkansas law because plaintiffs alleged, at most, breaches of contract and negligence by SBL in the administration of the FPL policies. Regarding the eleven annuity plaintiffs, the court observed that they may never sustain a loss, depending upon the outcome of pending insurer receiverships; in addition, all of the issues raised by these plaintiffs can be litigated in a pending state court class action in which plaintiffs are members of the certified class. *See Security Benefit Life Ins. Co. v. Graham*, 306 Ark. 39, 810 S.W.2d 943 (1991). In response to plaintiffs' motion to reconsider, the district court amended its order to specify that the dismissal was without prejudice. Plaintiffs then appealed.

It is well settled that each plaintiff, even in a class action, must individually satisfy the $50,000 jurisdictional amount requirement. *See Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). Punitive damages are included in determining the amount in controversy. *See Bell v. Preferred Life Assur. Society*, 320 U.S. 238, 240, 64 S.Ct. 5, 6, 88 L.Ed. 15 (1943). "While a plaintiff's good faith allegation is to be taken as true unless challenged, a plaintiff who has been challenged as to the amount in controversy has the burden of showing that the diversity jurisdiction requirements have been met." *Burns v. Massachusetts Mut. Life Ins. Co.*, 820 F.2d 246, 248 (8th Cir.1987). The district court should dismiss for lack of jurisdiction when it appears to a "legal certainty" that the plaintiff cannot satisfy the jurisdictional amount. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).

In this case, plaintiffs concede that they cannot satisfy the amount-in-controversy requirement without their claim for $7,500,000 in punitive damages. After carefully reviewing the record and considering the issues de novo, we agree with the district court that punitive damages are not recoverable on the facts alleged by plaintiffs. Therefore, plaintiffs' complaint was properly dismissed without prejudice.

Despite plaintiffs' elaborate attempt to convert their on-going contract disputes with SBL into a tort action, their allegations fail to meet the Arkansas standard for punitive damages. The fraud allegations are inadequate under Fed.R.Civ.Proc. 9(b). They fail to state with particularity

---

**3.** When SBL received neither a premium payment nor a notice that the policyholder had elected the zero premium option for that year, it "lapsed" the interest sensitive policy and converted it to "extended term" life insurance, which plaintiffs allege is less attractive for the policyholder and more profitable for SBL. McNeill Agency complained to SBL every time a policy was lapsed, arguing that a policy should not lapse if the policy's cash value is sufficient to pay the premium. SBL always reinstated the lapsed policies, but maintained that its interpretation of the premium payment option provisions was correct.

**4.** Plaintiffs allege that the surrender charges were wrongful because SBL intentionally administered their policies in a slipshod manner to force plaintiffs to surrender.

critical elements of fraud under Arkansas law—the actionable misrepresentations, how SBL intended plaintiffs to act in reliance on each of the alleged misrepresentations, the nature of plaintiffs' justifiable reliance on each misrepresentation, and the damage resulting from such reliance. *See Wilson v. Allen*, 305 Ark. 582, 810 S.W.2d 42, 43 (1991).

For example, plaintiffs on appeal place great emphasis on their allegation that SBL, in applying to acquire FPL in 1984, misrepresented to the Arkansas Commissioner that SBL had no plans to sell off FPL's assets. But plaintiffs fail to explain how, as existing FPL policyholders, they relied to their detriment on that alleged misrepresentation. *Compare MFA Mut. Ins. Co. v. Keller*, 274 Ark. 281, 623 S.W.2d 841 (1981). We agree with the district court that such inadequate fraud allegations cannot support a claim for punitive damages. "A bare allegation of fraud which results in a monetary loss would not justify punitive damages." *McClellan v. Brown*, 276 Ark. 28, 632 S.W.2d 406, 407 (1982).

■ Plaintiffs next allege that SBL is guilty of the tort of bad faith. Given *Quinn Cos. v. Herring–Marathon Group, Inc.*, 299 Ark. 431, 773 S.W.2d 94, 95 (1989), in which the Arkansas Supreme Court declined to extend the tort of bad faith to contractual relationships not involving insurance claims, we doubt that this tort would be applicable to the errors in policy administration alleged here. But in any event, plaintiffs fail to allege the kind of "dishonest, malicious, or oppressive" misconduct necessary to prove this tort. *Aetna Cas. & Sur. Co. v. Broadway Arms Corp.*, 281 Ark. 128, 664 S.W.2d 463, 465 (1984). *Compare Stevenson v. Union Standard Ins. Co.*, 294 Ark. 651, 746 S.W.2d 39, 42 (1988) ("refusal to pay a disputed claim does not constitute the tort of bad faith").

■ Finally, plaintiffs allege that SBL committed the tort of conversion by persistently failing to pay over funds allegedly owed under the policies "through SBL's wrongful interpretation of the contracts."

Even if the refusal to pay funds could constitute the exercise of dominion over plaintiffs' property, which we doubt in these circumstances, SBL's refusal to pay under an erroneous belief that it had a legal right to do so is not an intentional conversion for which punitive damages may be recovered. *See City Nat'l Bank of Fort Smith v. Goodwin*, 301 Ark. 182, 783 S.W.2d 335, 339 (1990).

■ Thus, we agree with the district court that, to a "legal certainty," the interest sensitive plaintiffs cannot recover punitive damages. Reduced to their essence, the claims of these plaintiffs run afoul of the principle that "a plaintiff may not transform a breach of contract action into a tort claim by alleging the breach was motivated by malice." *Quinn Cos.*, 773 S.W.2d at 94.

■ In addition, we find no abuse of discretion in the district court's dismissal without prejudice of the annuity plaintiffs' claims. Plaintiffs do not dispute that they are members of a certified class in a state court action in which their claims can be litigated. Even if the annuity plaintiffs could meet the jurisdictional amount requirement, which is highly doubtful given the problematic nature of their damages, the district court did not err in dismissing this diversity suit in favor of the state court action. *See Insurance Co. of the State of Pa. v. Syntex Corp.*, 964 F.2d 829 (8th Cir.1992); *Fiedler v. Reliance Elec. Co.*, 823 F.2d 269 (8th Cir.1987).

Accordingly, the judgment of the district court is affirmed.