SLIP OPINION

Cite as 2014 Ark. 278

# SUPREME COURT OF ARKANSAS

No. CV–13–357

| | |
|---|---|
| REGINALD R. EARLY<br>APPELLANT | **Opinion Delivered** June 19, 2014 |
| V. | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT<br>[NO. CV–2010–279–5] |
| KEITH CROCKETT; CLAYBORN CARROLL; ROBERTA LEWIS; AND LAMON MAYO<br>APPELLEES | HONORABLE JODI RAINES DENNIS, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART. |

**PAUL E. DANIELSON, Associate Justice**

Appellant Reginald R. Early, an inmate incarcerated in the Arkansas Department of Correction ("ADC"), appeals pro se from the Jefferson County Circuit Court's order dismissing with prejudice his complaint against Appellees Keith Crockett, Clayborn Carroll, Roberta Lewis, and Lamon Mayo, current or former employees of the ADC, on the basis that his claims were barred by the doctrines of sovereign immunity pursuant to article 5, section 20, of the Arkansas Constitution and statutory immunity under Arkansas Code Annotated § 19–10–305 (Repl. 2007). He asserts the following points on appeal: (1) that the circuit court erred in granting summary judgment to Appellees on his claim under 42 U.S.C. § 1983 against them in their official capacities where he was seeking declaratory and injunctive relief; (2) that the circuit court erred in granting summary judgment to Appellees on his failure-to-protect claim under 42 U.S.C. § 1983 against Appellees in their individual capacities; and (3)

SLIP OPINION

that the circuit court erred in granting Appellees summary judgment on his negligence claim that he brought against Appellees in their individual capacities. We affirm the circuit court's order in part and reverse and remand it in part.

On April 19, 2010, Early filed his complaint in the circuit court. Early's complaint stemmed from an incident at the Tucker Maximum Security Unit involving Early, an administratively segregated inmate, and Fred Hogan, an inmate assigned to the general population. Early asserted that his was a civil-rights action, under both 42 U.S.C. § 1983 and the Arkansas Civil Rights Act, for which he sought declaratory and injunctive relief, plus damages, resulting from Appellees' "failure to protect" him in violation of the prohibition against cruel and unusual punishment. In addition, Early asserted claims of assault, battery, and negligence.

Early's claims were based on the following facts, which he set forth in his complaint. On March 19, 2009, Early was scheduled for an off-site medical appointment. Sergeant Crockett and another officer came to Early's cell to escort him to the captain's office prior to his transport for the appointment. Early alleged that Sergeant Crockett radioed Sergeant Carroll to advise him of Early's position and to request that the hallways be cleared. As a result of the radio communication, Sergeant Carroll directed the general-population inmates who were in the hallway into the shower area while Early was escorted through the hallway. Early stated in the complaint that once he was secure in the captain's office, the inmates who had been directed into the shower area were moved.

Early contended that, despite the shower area having been cleared, four inmates

remained there. Early asserted that Sergeants Lewis, Mayo, and Crockett proceeded to escort him into the shower area to be strip-searched and that, at that time, Hogan approached him from behind and struck him on the right side of the chin, rendering him unconscious. Early alleged that he sustained injuries to his nose, face, tongue, and upper lip.

Early asserted that his suit was against Appellees in both their individual and official capacities and that Appellees had acted with deliberate and conscious indifference or in reckless disregard to his safety. He averred that Appellees failed to follow the prison's security policy of separating administratively segregated inmates and general-population inmates, and he further contended that Appellees' failure to protect him from attack by another inmate constituted cruel and unusual punishment in violation of the Eighth Amendment and article 2, section 9 of the Arkansas Constitution, constituting assault and battery. Appellees answered the complaint and asserted failure to exhaust administrative remedies, sovereign immunity, and statutory immunity as affirmative defenses. In an amended complaint and second amended complaint that incorporated the allegations of his original complaint, Early alleged that Appellees knew, or should have known, that their conduct would result in his injury; that their actions and omissions were acts of deliberate indifference, conscious indifference, negligence, and willful, wanton, and malicious conduct; that their actions or omissions in failing to protect him from attack by another inmate constituted negligence, assault, and battery; and that they exposed him to, and failed to adequately protect him from, a known and dangerous condition.

On December 7, 2012, Appellees moved for summary judgment, asserting that Early's

3

claims were barred by the doctrines of sovereign immunity and statutory immunity and further asserting that because both Early and Hogan had since been placed on each other's "enemy alert list," Early's request for injunctive relief was moot.[1]  Early responded that his requests for declaratory and injunctive relief under § 1983 as against Appellees in their official capacities were not barred by sovereign immunity.  Early also contended that his claim for negligence was not barred by statutory immunity.  After considering Appellees' motion and Early's response, the circuit court entered an order of dismissal, finding that Early's claims were barred by the doctrines of sovereign immunity and statutory immunity and dismissing the matter with prejudice.  Early now appeals.

I.  *Official-Capacities Claim under 42 U.S.C. § 1983 Seeking Declaratory and Injunctive Relief*

For his first point on appeal, Early argues that the circuit court erred in granting summary judgment on his civil-rights claim under 42 U.S.C. § 1983[2] against Appellees in their official capacities.  He contends that Appellees were not immune from his claims for

---

[1]In their brief-in-support of the summary-judgment motion, Appellees also asserted that Early had failed to exhaust his administrative remedies as to Sergeant Lewis.

[2]That section provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

declaratory and injunctive relief, and he further claims that any application of state sovereign or statutory immunity violates the Supremacy Clause.[3]  Appellees do not address Early's argument regarding his request for declaratory and injunctive relief, but instead respond that they are not subject to a § 1983 suit for monetary damages, as state officials acting in their official capacities are not persons within the meaning of the federal statute.  Early replies, asserting that a state official in his official capacity is a person for purposes of § 1983 because official-capacity actions seeking declaratory or injunctive, prospective relief are not treated as actions against the State.  For this reason, Early contends, Appellees were not entitled to immunity.

The law is well settled regarding the standard of review used by this court in reviewing a grant of summary judgment.  *See Repking v. Lokey*, 2010 Ark. 356, 377 S.W.3d 211.  A circuit court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law.  *See id*.  The burden of proof shifts to the opposing party once the moving party establishes a prima facie entitlement to summary judgment, and the opposing party must demonstrate the existence of a material issue of fact.  *See id*.  After reviewing the undisputed facts, the circuit court should deny summary judgment if, under the evidence, reasonable minds might reach different conclusions from the same undisputed facts.  *See id*.  On appeal,

---

[3]Early does not appear to challenge on appeal the circuit court's grant of summary judgment to Appellees on his § 1983 claim for damages against Appellees in their official capacities.  In fact, he states in his brief that "[t]he law is settled that a civil litigant cannot recover money damages from state actors in their official capacity."

this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party leave a material question of fact unanswered. *See id*. This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *See id*. This review is not limited to the pleadings but also includes the affidavits and other documents filed by the parties. *See id*. The issue of whether a party is immune from suit in a summary-judgment procedure is purely a question of law, and this court reviews that issue on appeal de novo. *See id*.

Here, Early sued Appellees under § 1983 in both their official and individual capacities. With respect to suit in their official capacities, Early has failed to demonstrate reversible error by the circuit court in granting summary judgment on the basis of immunity. In his complaints, Early sought a declaratory judgment, stating that

> [t]he failure to protect [him] from attack by another inmate by [Appellees] Carroll, Lewis, Mayo, and Crockett violated [his] rights under the Eighth Amendment to the United States Constitution and constituted negligence under state law of Arkansas.

He further sought the issuance of an injunction ordering Appellees or their agent to

> [i]mmediately arrange for the inmate Fred Lee Hogan #79894 and [him] to be placed on unit alert, prohibiting inmate Fred Lee Hogan #79894 and [him] from ever being housed at the same unit.

We initially observe that Early's request for injunctive relief appears from the record to be moot because Early and Hogan were placed on each other's enemy-alert list on March 20, 2009. Turning then to his request for declaratory relief, Early maintains that the circuit court erred in granting summary judgment to Appellees on his § 1983 claim against them in

6

SLIP OPINION

their official capacities because his was a suit seeking declaratory relief, to which, he claims, the doctrines of sovereign immunity and statutory immunity do not apply. Early cites this court to the United States Supreme Court's footnote in *Will v. Michigan Department of State Police*, in which the Court noted that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" 491 U.S. 58, 71 n.10 (1989) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). In *Will*, the Court opined that § 1983 was not "intended to disregard the well-established immunity of a State from being sued [in its own courts] without its consent," and it ultimately held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id*. at 67, 71. While Early does not so point out, this court in fact recognized and applied the *Will* footnote in *Honor v. Yamuchi*, 307 Ark. 324, 820 S.W.2d 267 (1991).

That being said, his reliance on what has become known as the *Ex Parte Young* doctrine is misplaced because the Court has held that the doctrine "applies only to prospective relief [and] does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Here, Early did not seek a declaration that was prospective in nature, but one declaring that Appellees had violated his constitutional rights in the past. Accordingly, we hold that his argument that the circuit court's grant of summary judgment on the basis of immunity was erroneous in light of his request for declaratory and injunctive relief is without

merit.[4]

## II. *Individual-Capacities Claim Under 42 U.S.C. § 1983*

The second point on appeal addresses the next two points raised by Early in his brief that pertain to his claim against Appellees in their individual capacities pursuant to 42 U.S.C. § 1983. Early argues that the circuit court erred in granting summary judgment on his § 1983 claim against Appellees in their individual capacities. Early appears to contend that there is a genuine issue of material fact remaining as to whether Appellees were deliberately indifferent to or recklessly disregarded his safety such that they were liable in their individual capacities under § 1983. Presumably, Early's assertion is that such evidence would preclude any entitlement by Appellees to immunity. Early further contends that there exists a factual question as to whether Appellees' failure to follow ADC's policies and procedures constituted deliberate indifference on their part.

Appellees counter Early's argument, stating that they were statutorily immune from a claim against them in their individual capacities pursuant to Ark. Code Ann. § 19-10-305. They maintain that because they were (1) employees of the ADC, and thus state employees; (2) alleged to have committed acts or omissions within the course and scope of their

---

[4]Early asserts under this point that the circuit court's application of state-law sovereign and statutory immunities to his § 1983 action violates the Supremacy Clause, citing to the barest of authority in support of his proposition. Normally, this court does not consider an argument, even a constitutional one, when there is no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *See, e.g., Foremost Ins. Co. v. Miller Cnty. Circuit Court*, 2010 Ark. 116, 361 S.W.3d 805. However, to the extent that such an inquiry is relevant in addressing his second point of appeal, it will be addressed there.

governmental duties; (3) that were not malicious in nature; and (4) to which no liability insurance applies, they were entitled to summary judgment on the basis of statutory immunity. Appellees contend that Early simply failed to state any facts or present any evidence that would constitute malicious conduct on their part. Their argument, however, does not appear to specifically address their immunity from Early's § 1983 claim against them in their individual capacities. As to Early's additional claim that a factual question exists relating to Appellees' alleged failure to follow ADC's policies and procedures, Appellees assert that the circuit court correctly dismissed Early's complaint on the basis that his claims were barred by sovereign and statutory immunity; therefore, they maintain, any issues of fact regarding Early's safety are "irrelevant to this appeal."

To establish a violation of § 1983, Early is required to show that he was deprived of a right secured by the United States Constitution and laws of the United States by Appellees acting under the color of state law. *See, e.g.*, *Repking*, 2010 Ark. 356, 377 S.W.3d 211. In the instant case, Early's § 1983 claim alleged that his Eighth Amendment right to be free from cruel and unusual punishment was violated when Appellees failed to take steps and neglected to follow the institutional policies and procedures required to protect him from the attack by Hogan. It has been recognized that the Eighth Amendment imposes upon correctional officers the duty to protect inmates from harm by other inmates. *See, e.g.*, *Perkins v. Grimes*, 161 F.3d 1127 (8th Cir. 1998).

State employees "have a qualified immunity from suit under § 1983 similar to the

immunity that applies to them with respect to the Arkansas law."[5] *Robinson v. Langdon*, 333 Ark. 662, 670, 970 S.W.2d 292, 296 (1998). "Under the standard of qualified immunity articulated in *Harlow v. Fitzgerald*, [457 U.S. 800, 818 (1982),] the government official will be entitled to immunity so long as his actions do not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.*, 970 S.W.2d at 296 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985)). Courts evaluating a claim of immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and, if so, whether that right was clearly established at the time of the alleged violation. *See Rainey v. Hartness*, 339 Ark. 293, 5 S.W.3d 410 (1999).

Early's § 1983 individual–capacities allegation, however, presents this court with an issue of first impression in that we have not previously had the opportunity to consider a prisoner's § 1983 claim alleging that prison officials did not take the proper steps to ensure his safety. For that reason, we have never before set forth the applicable standard for this type of

---

[5]The United States Supreme Court has rejected the notion that a state's immunity statute controlled a § 1983 claim even where the federal cause of action was being asserted in state court, noting:

> "Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced. *See McLaughlin v. Tilendis*, 398 F.2d 287, 290 (7th Cir. 1968). The immunity claim raises a question of federal law." *Hampton v. Chicago*, 484 F.2d 602, 607 (7th Cir. 1973), *cert. denied*, 415 U.S. 917 (1974).

*Martinez v. State of California*, 444 U.S. 277, 284 n.8 (1980). Therefore, as this court has recognized, immunity under state law is not dispositive of a § 1983 claim against state actors in their individual capacities, despite being brought in state court. *See Newton v. Etoch*, 332 Ark. 325, 965 S.W.2d 96 (1998).

SLIP OPINION

federal claim brought in this state's courts. Here, Early assumes that the federal standard of deliberate indifference applies to his claim, while Appellees asserted in their summary-judgment motion that any individual claim against them was barred by their state-statutory immunity under Ark. Code Ann. § 19-10-305, which provides state employees with statutory immunity from civil liability for non-malicious acts occurring within the course of their employment.[6] *See Simons v. Marshall*, 369 Ark. 447, 255 S.W.3d 838 (2007). They in turn relied on a standard of malice.

We agree with Early that the federal standard of deliberate indifference is the appropriate standard to be applied to such claims. This court has previously recognized the federal deliberate-indifference standard and adopted it as the proper standard to be applied to claims brought by pretrial detainees under the Arkansas Civil Rights Act, *see Grayson v. Ross*, 369 Ark. 241, 253 S.W.3d 428 (2007), and we can conceive of no reason why we would not apply the federal standard to a federal civil-rights claim of the nature alleged by Early and filed by a prisoner in state court. We therefore take this opportunity to establish that the deliberate-indifference standard is the applicable standard to § 1983 individual-capacity claims by prisoners asserting a failure to protect by prison officials in this state's courts. We turn then to what that standard entails.

---

[6]That statute states, in pertinent part:
> (a) Officers and employees of the State of Arkansas are immune from liability and from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment.

Ark. Code Ann. § 19-10-305(a).

Prison officials are required by the Eighth Amendment to take "reasonable measures to guarantee the safety of inmates[;] [i]n particular, . . . prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). A government official violates the Eighth Amendment if that official is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates. *See Berry v. Sherman*, 365 F.3d 631 (8th Cir. 2004). With respect to the federal standard, the Eighth Circuit Court of Appeals provides us with guidance on the necessary showing for failure-to-protect claims:

> "In order to establish an Eighth Amendment failure-to-protect claim, a plaintiff must show that the prison official was deliberately indifferent to a 'substantial risk of serious harm.'" *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007) (quoting *Farmer*, 511 U.S. at 828). In doing so, a prisoner must satisfy two requirements, one objective and one subjective. The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious; i.e., whether the inmate "is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. The second requirement is subjective and requires that the inmate prove that the prison official had a "sufficiently culpable state of mind." *Id.* (quotation omitted).

*Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010). "The more critical inquiry for qualified-immunity purposes is whether it was 'objectively legally reasonable' for the prison officials to believe that [their] conduct did not violate the inmate's clearly established Eighth Amendment right." *Berry*, 365 F.3d at 634 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

With regard to the standard of deliberate indifference, the Eighth Circuit has observed that "[a]s applied to a prison official in the Eighth Amendment context, the Supreme Court has made it clear that 'deliberate indifference' requires subjective knowledge: no liability

attaches 'unless the official *knows of* and disregards an excessive risk to inmate health and safety.'" *Walton v. Dawson*, ___ F.3d ___, ___, 2014 WL 2053835 at ⋆4 (8th Cir. May 20, 2014) (emphasis in original) (quoting *Farmer*, 511 U.S. at 837).  In other words, deliberate indifference is the reckless disregard of a known, excessive risk of serious harm to inmate health or safety.  *See Jackson v. Everett*, 140 F.3d 1149 (8th Cir. 1998).  It includes something more than negligence, but less than actual intent to harm.  *See Holden v. Hirner*, 663 F.3d 336 (8th Cir. 2011).

Deliberate indifference requires a showing that the official knew the risk existed, but disregarded it.  *See Spruce v. Sargent*, 149 F.3d 783 (8th Cir. 1998).  And, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  *Berry*, 365 F.3d at 634 (quoting *Farmer*, 511 U.S. at 844).  As applied in the instant case, the foregoing suggests that the relevant inquiries would include (1) whether a substantial risk to Early's health or safety existed; and (2) whether Appellees had knowledge of the substantial risk to Early's health or safety, but nevertheless disregarded it.  *See, e.g.*, *Nelson v. Correctional Med. Servs.*, 583 F.3d 522 (8th Cir. 2009).

In the instant case, the circuit court granted summary judgment on Early's § 1983 claims against Appellees in their individual capacities on the basis of statutory immunity; thus, it is patently clear that the circuit court did not have the opportunity to consider Early's claim in light of qualified immunity and the federal standard of deliberate indifference.  To that end, it is necessary to remand the matter to the circuit court for consideration of Early's claim

under this standard so as to determine whether Appellees are entitled to qualified immunity on his § 1983 claim against them in their individual capacities. We therefore reverse and remand for this determination. Because we do so, we need not address Early's contention that a factual question exists relating to Appellees' failure to follow ADC's policies and procedures because it pertains to the same claim.

### III. *Individual-Capacities Claim for Negligence*

The final two points in Early's brief relate to his negligence claim against Appellees in their individual capacities. Early argues that the circuit court erred in granting summary judgment to Appellees on his negligence claim against them in their individual capacities. Early claims that there existed a genuine issue of material fact about whether Appellees were negligent when they failed to exercise reasonable or ordinary care to protect him from attack. He contends that Appellees knew there was a risk to his safety in light of the fact that the ADC policies and procedures required the segregation of administratively segregated and general–population inmates and that, knowing this risk, their failure to protect him constituted negligence. Appellees counter that the circuit court correctly granted summary judgment to them on the basis of statutory immunity.

As already set forth, Ark. Code Ann. § 19–10–305(a) provides statutory immunity to state employees and government officials:

> Officers and employees of the State of Arkansas are immune from liability and from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment.

The statute provides state employees with qualified immunity from civil liability for

non-malicious acts occurring within the course of their employment. *See City of Fayetteville v. Romine*, 373 Ark. 318, 284 S.W.3d 10 (2008). Conversely, an officer or employee who acts maliciously or outside the scope of his employment is not protected by § 19-10-305(a). *See Newton v. Etoch*, 332 Ark. 325, 965 S.W.2d 96 (1998). In defining malice as it is used in § 19-10-305, this court has stated:

> "It is true that in law malice is not necessarily personal hate. It is rather an intent and disposition to do a wrongful act greatly injurious to another." *Satterfield v. Rebsamen Ford, Inc.*, 253 Ark. 181, 185, 485 S.W.2d 192, 195 (1972); *see also Stine v. Sanders*, 66 Ark. App. 49, 987 S.W.2d 289 (1999). Malice is also defined as "the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent . . . . A conscious violation of the law . . . which operates to the prejudice of another person. A condition of the mind showing a heart . . . fatally bent on mischief." *Black's Law Dictionary*, 956–57 (6th ed. 1990).

*Fuqua v. Flowers*, 341 Ark. 901, 905–06, 20 S.W.3d 388, 391 (2000).

Here, Early's allegations are premised on Appellees' purported failure to follow ADC's policies and procedures that he claims dictate that administratively segregated inmates be segregated from general-population inmates. Specifically, he alleged that "[t]he actions and omissions of defendants Carroll, Lewis, Mayo, and Crockett in failing to protect plaintiff from attack by another inmate constitutes the tort of negligence under State law of Arkansas." Early stated, in pertinent part, that

> 14. Defendant Carroll left four (4) general population inmates in the shower area unsecure and unsupervised leaving the shower gate open.

> 15. Defendants Lewis, Mayo and Crockett escorted Plaintiff from the Captain's office into the shower area where there was four (4) general population inmates to strip search Plaintiff.

> 16. Inmate Hogan who is known to be violent, and one of the general

population inmates left in the shower area walk up [*sic*] behind the Plaintiff and hit Plaintiff between the right side of the chin and jaw, knocking Plaintiff unconscious. Inmate Hogan hit Plaintiff numerous times about the head and face causing injuries to Plaintiff's nose, face, tongue, and upper lip.

Record, at 271.

Noticeably absent from Early's complaint, statement of the facts, allegations, or evidence is anything to suggest that the attack on him by Hogan was something other than a surprise to all involved. Even if Appellees had ignored ADC's policies and procedures and did not take adequate steps to protect Early from harm by another inmate, he has alleged nothing to suggest that they acted with malice or with the intent to cause Early harm. While Early states in his complaint that the Appellees acted maliciously, his statement is a conclusory one, and we have held that a bare allegation of willful and wanton conduct is not enough to demonstrate malice. *See Simons v. Marshall*, 369 Ark. 447, 255 S.W.3d 838 (2007).

In sum, we have viewed the evidence in the light most favorable to Early and resolved all doubts and inferences against Appellees, and the instant record is simply devoid of any allegation or evidence demonstrating malice on Appellees' part. Because no genuine issue of material fact existed to overcome the Appellees' statutory immunity under § 19-10-305, we affirm the circuit court's grant of summary judgment as to Early's negligence claim against Appellees in their individual capacities.

For the foregoing reasons, we affirm the circuit court's order in part and reverse and remand in part.[7]

---

[7]A careful review of Early's brief and the arguments therein reveal no challenge to the circuit court's grant of summary judgment to Appellees on his official- and individual-capacity

Affirmed in part; reversed and remanded in part.

*Reginald R. Early*, pro se appellant.

*Dustin McDaniel*, Att'y Gen., by: *Gary L. Sullivan*, Ass't Att'y Gen., for appellees.

---

claims under the Arkansas Civil Rights Act or for assault and battery. It is axiomatic that claims raised below but not argued on appeal are considered abandoned. *See Decay v. State*, 2013 Ark. 185.